UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| BRENADETTE TURNER, Individually and For Others Similarly Situated,<br><br>  Plaintiff,<br><br>v.<br><br>WESTERN LAND SERVICES, INC.,<br><br>  Defendant. | Case No. _____<br><br>JURY TRIAL DEMANDED<br><br>COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)<br><br>CLASS ACTION PURSUANT TO F.R.C.P. 23 |

**ORIGINAL COMPLAINT**

SUMMARY

1. Brenadette Turner (Turner) brings this lawsuit to recover unpaid overtime wages and other damages from Defendant Western Land Services, Inc. (WLS) under the Fair Labor Standards Act (FLSA) and the Ohio Minimum Fair Wage Standards Act and the Ohio Prompt Pay Act (the Ohio Minimum Fair Wage Act and the OPPA will be referred to collectively as the "OWA").

2. Turner worked for WLS as a Right of Way Agent.

3. Turner and the Putative Class Members (as defined below) regularly worked more than 40 hours a week.

4. But these workers never received overtime for hours worked in excess of 40 hours in a single workweek.

5. Instead of receiving overtime as required by the FLSA and OWA, WLS classified Turner and the Putative Class Members as independent contractors and paid a flat amount for each day worked (a "day rate") without overtime compensation.

6. Turner or the Putative Class Members never received a guaranteed salary.

7. This class and collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## JURISDICTION & VENUE

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9. The Court has federal jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d). The Court also has supplemental jurisdiction over any state law sub-classes pursuant to 28 U.S.C. § 1367.

10. Venue is proper under 28 U.S.C. § 1391(b)(1) as WLS maintains its headquarters in this District and Division.

11. Specifically, WLS maintains its headquarters in Ludington, Michigan, and WLS conducts substantial business operations in Western Michigan including decisions about employee classification and pay practices.

## PARTIES

12. Turner worked for WLS as a Right of Way Agent from approximately September 2017 to December 2018.

13. Throughout her employment with WLS, Turner was paid a day rate with no overtime compensation and was classified as an independent contractor by WLS.

14. In fact, Turner's relationship with WLS was an employer and employee relationship.

15. Turner's written consent is attached as Exhibit A.

16. Turner brings this action on behalf of herself and all other similarly situated workers who were classified as independent contractors and paid by WLS' day rate system.

17. Each of these workers received a flat amount for each day worked and did not receive overtime for hours worked in excess of 40 in a workweek in accordance with the FLSA.

18. The collective of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All Right of Way Agents[1] who worked for, or on behalf of, WLS who were paid a day rate at any time during the past 3 years.** (the "Putative Class Members" and the "FLSA Class").

19. Turner further seeks certification of a class under FED. R. CIV. P. 23 to remedy WLS' violations of the OWA.

20. The class of similarly situated employees sought to be certified as a class action under the OWA is defined as:

> **All Right of Way Agents who worked for, or on behalf of, WLS in Ohio who were paid a day rate in the past 3 years.** (the "Ohio Class").

21. The Putative Class Members are easily ascertainable from WLS' business and personnel records.

22. Defendant WLS is a corporation that maintains its headquarters in Ludington, Michigan and may be served with process by serving its registered agent: **John K. Wilson, 1100 Conrad Industrial Dr., Ludington, Michigan 49431** or wherever they may be found.

## COVERAGE UNDER THE FLSA

23. At all relevant times, WLS has been an employer within the meaning of the Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

24. At all relevant times, WLS was and is an employer within the meaning of the OWA.

25. At all relevant times, WLS has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1). WLS has and has had employees engaged in commerce or in the production of goods for

---

[1] Plaintiff uses the term "Right of Way Agent" throughout as the general industry term. This is meant to include this job position regardless of specific name used, including "Land Agent," "Landman," "Title Examiner," and "Abstractor."

commerce, or employees handling, selling, or otherwise working on goods or materials – such as tools, cell phones, and personal protective equipment - that have been moved in or produced for commerce.

26. In each of the last 3 years, WLS has had annual gross volume of sales made or business done of at least $1,000,000.

27. At all relevant times, Turner and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

28. WLS treated Turner and the Putative Class Members as employees and uniformly dictated the pay practices applied to Turner and the Putative Class Members.

29. WLS' misclassification of Turner and the Putative Class Members as independent contractors does not alter their status as employees for purposes of the FLSA or the OWA.

30. WLS' uniform day rate scheme, depriving its employees of overtime compensation for weeks in which these workers work over 40 hours is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

**FACTUAL ALLEGATIONS**

31. WLS "is a full-service land brokerage firm offering an expansive portfolio of services throughout the entire United States"[2] including "thousands of miles of Right-of-Way acreage for our clients […] include[ing] midstream ROW acquisitions for crude oil, natural gas, and NGL lines of all scopes and sizes"[3] and "surface title, abstracts for drilling title opinions, oil and gas abstracts, coal title, right-of-way title, due diligence, HBP, heirship, mineral title, and limited title, all designed to fit client specifications and scope of work."[4]

32. To complete its business objectives, WLS hires personnel, such as Turner, to perform inspection services.

---

[2] http://www.westernls.com/our-services/ (last visited May 7, 2020).
[3] http://www.westernls.com/our-services/Right-of-Way/(last visited May 7, 2020).
[4] http://www.westernls.com/our-services/title/(last visited May 7, 2020).

33. WLS considers Turner and the Putative Class Members to be contractors.

34. But WLS does not hire these workers on a project-by-project basis.

35. Rather, WLS hires and treats these workers just like regular, even if sometimes short term, employees.

36. Many of these individuals worked for WLS on a day rate basis (without overtime pay).

37. These workers make up the proposed Putative Class.

38. For example, Turner worked for WLS as a Right of Way Agent from approximately September 2017 until December 2018.

39. As a Right of Way Agent, Turner's primary job duties include making phone calls to land and mineral rights owners, setting up appointments with these owners, visiting the land to facilitate contracts and lease agreements, and submitting paperwork.

40. Turner did not have any supervisory duties.

41. Turner did not hire for fire employees.

42. Turner did not exercise discretion and judgment as to matters of significance.

43. Throughout her employment with WLS, she was classified as an independent contractor and paid on a day rate basis.

44. Turner and the Putative Class Members work for WLS under its day rate pay scheme.

45. Turner and the Putative Class Members do not receive a salary.

46. If Turner and the Putative Class Members did not work, they did not get paid.

47. Turner and the Putative Class Members receive a day rate.

48. Turner and the Putative Class Members do not receive overtime pay.

49. This is despite the fact that Turner and the Putative Class Members often work more than 10 hours a day, for as many as 7 days a week, for weeks at a time.

50. Although Turner typically worked up to 7 days a week, for 10 or more hours a day, she did not receive any overtime pay.

51. Turner and the Putative Class Members received the day rate regardless of the number of hours they worked, and even if they worked more than 40 hours in a workweek.

52. Without the job performed by Turner and the Putative Class Members, WLS would not be able to complete its business objectives.

53. Turner and the Putative Class Members relied on WLS for work and compensation.

54. Turner and the Putative Class Members worked in accordance with the schedule set by WLS.

55. Turner and the Putative Class Members cannot subcontract out the work they are assigned by WLS.

56. Turner and the Putative Class Members must follow WLS' policies and procedures.

57. Turner and the Putative Class Members' work must adhere to the quality standards put in place by WLS.

58. Turner and the Putative Class Members did not substantially invest in the tools required to complete the overall job to which they were assigned.

59. Turner and the Putative Class Members did not market their services while employed by WLS.

60. Turner and the Putative Class Members worked exclusively for WLS during the relevant period.

61. Turner and the Putative Class Members did not incur operating expenses like rent, payroll, marketing, or insurance.

62. WLS set Turner and the Putative Class Members' work schedule, which prohibited them from working other jobs for other companies while working on jobs for WLS.

63. At all relevant times, WLS maintained control, oversight, and direction of Turner and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

64. Turner's work schedule is typical of the Putative Class Members.

65. WLS controls Turner and the Putative Class Members' pay.

66. Likewise, WLS and/or its clients control Turner and the Putative Class Members' work.

67. Turner and the Putative Class Members' work must adhere to the quality standards put in place by WLS and/or its clients.

68. Turner and the Putative Class Members are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

69. WLS knows Turner and the Putative Class Members work for 10 or more hours a day, for as many as 7 days a week.

70. WLS' records reflect the fact that Turner and the Putative Class Members regularly work far in excess of 40 hours in certain workweeks.

71. Turner and the Putative Class Members do not receive overtime for hours worked in excess of 40 in any of those weeks.

72. Instead, Turner and the Putative Class Members are paid on a day rate basis.

73. WLS sets these workers' schedules and compensation; supervises them; requires them to adhere to strict guidelines, directive, and its policies and procedures.

74. WLS controls Turner and the Putative Class Members' opportunities for profit and loss by dictating the days they work and the rates they are paid.

75. While working for WLS, WLS controlled all the significant or meaningful aspects of the job duties Turner and the Putative Class Members perform.

76. WLS exercises control over the hours and locations Turner and the Putative Class Members work, the tools and equipment they use, and the rates of pay they receive.

77. Even though Turner and the Putative Class Members work away from WLS' offices without the constant presence of WLS supervisors, WLS still controls significant aspects of their job activities by enforcing mandatory compliance with its policies and procedures.

78. The daily and weekly activities of Turner and the Putative Class Members are routine and largely governed by standardized plans, procedures, and checklists created by WLS.

79. WLS prohibits Turner and the Putative Class Members from varying their job duties outside of the predetermined parameters and requires Turner and the Putative Class Members to follow WLS' policies, procedures, and directives.

80. All of the Putative Class Members perform similar job duties and are subjected to the same or similar policies and procedures which dictate the day-to-day activities they perform.

81. All of the Putative Class Members work similar hours and are denied overtime as a result of the same illegal pay practice.

82. All of the Putative Class Members work in excess of 40 hours each week.

83. WLS uniformly denies Turner and the Putative Class Members overtime for the hours they work in excess of 40 hours in a single workweek.

84. Turner and the Putative Class Members do not, and have never, received guaranteed weekly compensation irrespective of the day worked (i.e., the only compensation they receive is the day rate they are assigned for all hours worked in a single day or week).

85. WLS' day rate policy violates the FLSA because it deprives Turner and the Putative Class Members of overtime for the hours they work in excess of 40 hours in a single workweek.

86. WLS knew Turner and the Putative Class Members worked more than 40 hours in a week.

87. WLS knew, or showed reckless disregard for whether, the Putative Class Members were not exempt from the FLSA's overtime provisions.

88. Nonetheless, Turner and the Putative Class Members were not paid overtime.

89. WLS knew, or showed reckless disregard for whether, the conduct described in this Complaint violated the FLSA.

## CAUSE OF ACTION
## VIOLATION OF THE FLSA

90. Turner brings her FLSA claim as a collective action under 29 U.S.C. § 216(b).

91. WLS violated, and is violating, the FLSA by failing to pay Turner and the Putative Class Members overtime.

92. WLS misclassified the Plaintiff and Putative Class Members for purposes of the FLSA overtime requirements.

93. WLS cannot meet its burden to demonstrate the Plaintiff and Putative Class Members are exempt from overtime under the administrative exemption.

94. WLS cannot meet its burden to demonstrate the Plaintiff and Putative Class Members are exempt from overtime under the executive exemption.

95. WLS cannot meet its burden to demonstrate the Plaintiff and Putative Class Members are exempt from overtime under the professional exemption.

96. WLS cannot meet its burden to demonstrate the Plaintiff and Putative Class Members are exempt from overtime under the highly compensated exemption.

97. WLS misclassified the Plaintiff and Putative Class Members as contractors.

98. WLS failed to guarantee the Plaintiff and Putative Class Members a salary.

99. WLS failed to pay the Plaintiff and Putative Class Members overtime.

100. WLS paid the Plaintiff and Putative Class Members a day rate.

101. WLS knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Putative Class Members overtime compensation.

102. WLS' failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

103. Accordingly, Turner and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees and costs.

### OWA Violations

104. Turner brings her claims under the OWA as a Rule 23 class action.

105. The conduct alleged violates the OWA (O.R.C. §§4111.01. 4111.03 and 4111.10).

106. At all relevant times, WLS was subjected to the requirements of the OWA.

107. At all relevant times, WLS employed Turner and each Ohio Class Member with Ohio state law claims as an "employee" within the meaning of the OWA.

108. The OWA requires employers like WLS to pay employees at 1 and ½ times the regular rate of pay for hours worked in excess of 40 hours in any one week.

109. Turner and the Ohio Class are entitled to overtime pay under the OWA.

110. WLS had a policy and practice of failing to pay these workers overtime for hours worked in excess of 40 in a workweek.

111. Turner and the Ohio Class seek unpaid overtime in amount equal to 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

112. Turner and the Ohio Class also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by WLS, as provided by the OWA.

**CLASS AND COLLECTIVE ACTION ALLEGATIONS**

113. Turner incorporates all previous paragraphs and alleges that the illegal pay practices WLS imposed on Turner were likewise imposed on the Members of the FLSA and Ohio Classes.

114. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA and the OWA.

115. Numerous other individuals who worked with Turner indicated they were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

116. Based on their experiences and tenure with WLS, Turner are aware that WLS's illegal practices were imposed on the FLSA and the Ohio Classes.

117. The FLSA and the Ohio Classes were all not paid any overtime compensation when they worked in excess of forty (40) hours per week.

118. WLS's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Members of the FLSA and the Ohio Classes.

119. Turner's experiences are therefore typical of the experiences of the Members of the FLSA and the Ohio Classes.

120. The specific job titles or precise job locations of the Members of the FLSA and the Ohio Classes do not prevent class or collective treatment.

121. Turner have no interest contrary to, or in conflict with, the Members of the FLSA and the Ohio Classes. Like each Class Member, Turner has an interest in obtaining the unpaid overtime wages owed to them under state and/or federal law.

122. Like each member of the FLSA and the Ohio Classes, Turner has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

123. Upon information and belief, WLS employed more than 40 Class Members in Ohio during the relevant period.

124. The precise size and the identity of the members of the FLSA and the Ohio Classes, is ascertainable from the business records, tax records, and/or employee or personnel records maintained by WLS.

125. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

126. Absent this action, many Members of the FLSA and the Ohio Classes likely will not obtain redress of their injuries and WLS will reap the unjust benefits of violating the FLSA and the OWA.

127. Furthermore, even if some of the Members of the FLSA and the Ohio Classes could afford individual litigation against WLS, it would be unduly burdensome to the judicial system.

128. If individual actions were required to be brought by each member of the FLSA and the Ohio Classes, it would necessarily result in a multiplicity of lawsuits and would create hardship to members of the FLSA and the Ohio Classes, to WLS, and to the Court.

129. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

130. The questions of law and fact common to the Members of the FLSA and the Ohio Classes predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

   a. Whether WLS employed the Members of the FLSA, Ohio Classes within the meaning of the applicable state and federal statutes, including the FLSA and the OWA;

   b. Whether WLS' day rate pay practice meets the salary-basis test;

   c. Whether WLS' decision to not pay time and a half for overtime to the Members of the FLSA and the Ohio Classes was made in good faith;

   d. Whether WLS' violation of the FLSA and the OWA was willful; and

  e. Whether WLS' illegal pay practices were applied uniformly to all Members of the FLSA and the Ohio Classes.

131. Turner' claims are typical of the claims of the Members of the FLSA and the Ohio Classes. Turner and the Members of the FLSA and the Ohio Classes sustained damages arising out of WLS' illegal and uniform employment policy.

132. Turner knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class and/or collective action.

133. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class and/or collective action treatment.

## JURY DEMAND

134. Turner demands a trial by jury.

## PRAYER

WHEREFORE, Turner, individually, and on behalf of the Putative Class Members respectfully requests that this Court grant the following relief:

  a. An order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) to the Putative Class Members to permit them to join this action by filing a written notice of consent;

  b. For an Order designating the Ohio Class as a class action pursuant to FED. R. CIV. P. 23;

  c. For an Order finding WLS liable to Plaintiffs and the Ohio Class for unpaid overtime owed under the OWA at the highest available rates allowed by law;

  d. For an Order finding WLS liable to Plaintiffs and the FLSA Class Members for unpaid overtime owed under the FLSA, as well as liquidated damages in an amount equal to their unpaid compensation;

  e. A judgment against WLS awarding Turner and the Putative Members all their unpaid overtime compensation and an additional, equal amount, as liquidated damages;

 f. Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under the FLSA;

 g. An order awarding attorneys' fees, costs, and expenses;

 h. Pre- and post-judgment interest at the highest applicable rates; and

 i. Such other and further relief as may be necessary and appropriate.

    Respectfully submitted,

    By: */s/Jennifer L. McManus*
     **Jennifer L. McManus** (P65976)
     Local Attorney for Plaintiff
     **Fagan McManus, P.C.**
     25892 Woodward Avenue
     Royal Oak, MI 48067-0910
     (248) 542-6300
     jmcmanus@faganlawpc.com

     **Michael A. Josephson**
     TX Bar 24014780
     **Andrew W. Dunlap**
     TX Bar No. 24078444
     **JOSEPHSON DUNLAP**
     11 Greenway Plaza, Suite 3050
     Houston, Texas 77046
     713-352-1100 – Telephone
     713-352-3300 – Facsimile
     mjosephson@mybackwages.com
     adunlap@mybackwages.com

     **AND**

     **Richard J. (Rex) Burch**
     TX Bar No. 24001807
     **BRUCKNER BURCH PLLC**
     8 Greenway Plaza, Suite 1500
     Houston, Texas 77046
     713-877-8788 – Telephone
     713-877-8065 – Facsimile
     rburch@brucknerburch.com

    **ATTORNEYS IN CHARGE FOR PLAINTIFF**