# EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE

**Bernadette Turner** ("Turner"), **Turner Title Service LLC** ("TTS"), and **Western Land Services, Inc.** ("WLS") (collectively, the "Parties") enter into this Settlement Agreement and Release (the "Agreement") in settlement of the civil lawsuit titled *Bernadette Turner v. Western Land Services, Inc.*, Case No. 1:20-cv-406 in the U.S. District Court for the Western District of Michigan (the "Lawsuit"), and any other claims or allegations Turner has asserted or could have asserted.

The Parties agree as follows:

**1. Court Approval:** This Agreement is contingent upon the entry of a final court order (following resolution of any appeals or appeal rights) (a) approving this Agreement; (b) approving the payments to Turner described in Section 2; and (c) dismissing Turner's claims in the Lawsuit in their entirety, with prejudice, and without any award of costs or fees to any party. The Parties authorize their attorneys to take all actions necessary to file a Joint Motion to Approve Settlement and execute all documents that are necessary to fulfill these contingencies.

**2. Payment:** Provided that Turner, TTS, and Turner's attorneys sign this Agreement, deliver it to WLS's counsel of record in the Lawsuit on or before August 14, 2020, and comply with its terms, WLS will pay Turner $4,000 within 14 days after the Court enters an appropriate and final order as described in Section 1 of this Agreement. The $4,000 payment will be allocated as follows:

   a. $2,100.00 payable to Turner in compromise of her disputed claim for alleged unpaid overtime or minimum wages. This amount will be paid by direct deposit and WLS will not withhold any taxes from this amount. WLS will issue a form 1099 evidencing this payment; and

   b. $1,900.00 payable to Turner's attorneys, Josephson Dunlap LLP, in compromise of Turner's disputed claim for attorney fees and costs. Josephson Dunlap LLP will provide WLS with a completed IRS form W-9 on or before the date Turner delivers this Agreement to WLS's counsel.

**3. Covered Entities:** For purposes of Sections 4 through 12 of this Agreement:

   a. "WLS" means and includes Western Land Services, Inc., and all of its affiliated, parent, sister, or subsidiary entities, all entities in a relationship of common control with any of them, all employee benefit plans sponsored, maintained, or administered by any of those entities, and their past, present, and future shareholders, members, owners, directors, officers, employees, representatives, successors, and assigns.

   b. "Turner" means and includes Bernadette Turner and her heirs, personal representatives, successors and assigns, and any person or entity that asserts or purports to assert any claim or right on her behalf.

      c.      "TTS" means Turner Title Service LLC, and all of its affiliated, parent, sister, or subsidiary entities, all entities in a relationship of common control with any of them, all employee benefit plans sponsored, maintained, or administered by any of those entities, and their past, present, and future shareholders, members, owners, directors, officers, employees, representatives, successors, and assigns.

**4.**      **Tax Indemnification:** Turner and her attorneys, Josephson Dunlap LLP, are solely responsible to pay any tax liability that may be imposed by any governmental body based upon the payments made under this Agreement.

**5.**      **Release:** Turner and TTS release and forever discharge WLS from any and all claims, allegations, causes of action, charges, suits, demands, injuries, losses, damages, attorney fees, and costs of any kind, whether presently known or unknown to the Parties, arising from any fact, circumstance or event that occurred or existed at any time before Turner signs this Agreement. This release includes, but is not limited to, any matters arising from or in any way related to any services that Turner or TTS performed or allegedly performed for WLS, WLS's payment of Turner or TTS for such services, any alleged non-payment or underpayment by WLS for such services, or any other treatment, conduct, or events occurring in connection with such services. This release is intended as a general release and includes all claims whatsoever, whether based upon federal, state or local statutes, regulations, rules, or ordinances, the common law, or any other legal or equitable grounds, including but not limited to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, the Ohio Minimum Fair Wage Standards Act, Ohio Revised Code §§ 4111.01 *et seq.*, the Ohio Wage Payment Law, Ohio Revised Code § 4113.15, and the Ohio Prompt Pay Act, Ohio Revised Code § 4113.61.

**6.**      **No Future Claims:**

      a.      Turner and TTS agree that neither of them will initiate, encourage, pursue, or participate in any proceeding that is based on any claim or right that has been released in this Agreement. Turner and TTS agree that neither of them will, with respect to any claim or right that has been released in this Agreement, (i) opt in to any FLSA collective action, (ii) seek or participate in seeking certification of any collective action under FLSA or any class action under any other law, or (iii) receive any remedy, remuneration, benefit, or other thing of value in connection with any action, proceeding, claim, threatened claim, or demand.

      b.      This Agreement does not limit Turner's right to file a claim with a federal or state agency where such a right cannot be waived as a matter of law, nor her right to participate in an investigation or proceeding initiated or conducted by such an agency. But Turner waives and agrees that she will not seek or receive any monetary or other remedy from WLS in connection with any claim, investigation, or proceeding initiated or conducted by any such agency or any other person or organization.

      c.      If Turner or TTS initiates, pursues or participates in a proceeding in violation of this Section, then (i) Turner and TTS hereby instruct the court, agency or other forum in which such proceeding is pending to dismiss such proceeding with prejudice immediately upon WLS giving written notice to the court, agency or other forum that the

proceeding is a violation of this Agreement; and (ii) Turner and TTS, jointly and severally, will compensate WLS for all of the costs and expenses it incurs in connection with that proceeding (including actual attorney fees and any liability for a judgment or settlement).

**7.     Independent Contractor Status:** Turner agrees that she will not claim or tell to anyone that she provided services to WLS as an employee.

**8.     No Admission of Liability:** The Parties acknowledge that this Agreement represents the compromise of a disputed claim and that any claim of liability is denied. No term of this Agreement, nor any action taken by either party in connection with this Agreement, shall be interpreted to render either party a prevailing party for any reason, including but not limited to an award of attorney fees or costs.

**9.     Acknowledgements by Turner:** Turner acknowledges that would not be entitled to the payments described in Section 2 if she did not sign this Agreement, and that those payments are valuable and sufficient consideration for the promises she makes in this Agreement. Turner acknowledges that she has read this Agreement in its entirety, understands all of its terms, and enters into this Agreement knowingly and voluntarily. Turner is advised to consult with attorneys of her choice before she signs this Agreement, and acknowledges that she has done so.

**10.    Signatures:** This Agreement may be signed in one or more counterparts. The Agreement will be deemed to be fully signed once each party has signed one or more counterparts. Either party may sign or deliver the Agreement or a counterpart by electronic means, including electronic mail or telefax.

**11.    Entire Agreement:** This Agreement states the entire agreement of the Parties, and replaces any previous discussions, communications, or understandings. No party has made or relied upon any promise or assurance that is not written in this Agreement. This Agreement may not be modified except in writing signed by Turner, the manager of TTS, and the President of WLS.

**12.    Governing Law:** This Agreement is governed by Michigan law.

*Signatures are on the following page*

**Bernadette Turner**

_____
Signature

Date:  August ___, 2020

**Turner Title Service LLC**

By: _____

Title: _____

Date:  August ___, 2020

**With respect to Sections 2(b) and 4 only:**

**Josephson Dunlap LLP**
Attorneys for Brenadette Turner

_____
Signature

Date:  August ___, 2020

**Western Land Services, Inc.**

By:  _____ *Shawn Fields* _____
     SHAWN FIELDS

Title:  _____ PRESIDENT _____

Date:  August **25**, 2020

| | |
|---|---|
| **Bernadette Turner** | **Western Land Services, Inc.** |
| *Brenadette B Turner* <br> Brenadette B Turner (Aug 25, 2020 16:21 EDT) <br> Signature | By: _____ |
| Date: August 25, 2020 | Title: _____ |
| | Date: August __, 2020 |

**Turner Title Service LLC**

By: *Brenadette B Turner*
Brenadette B Turner (Aug 25, 2020 16:21 EDT)

Title: Owner

Date: August 25, 2020

**With respect to Sections 2(b) and 4 only:**

**Josephson Dunlap LLP**
Attorneys for Brenadette Turner

_[signature]_
Signature

Date: August 25, 2020

4